Paula PRINGLE, Petitioner,

v.

COURT OF COMMON PLEAS OF CUMBERLAND COUNTY, et al., Respondents.

Civ. No. 83-0364.

United States District Court, M.D. Pennsylvania.

March 11, 1985.

Thomas M. Place, Carlisle, Pa., for petitioner.

Theodore B. Smith, Carlisle, Pa., for respondents.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

### I. PROCEDURAL BACKGROUND

We consider herein Petitioner's claim that Title 18 Pa.C.S.A. § 5503(a)(3), a portion of the Pennsylvania Disorderly Conduct Statute, is violative of the 1st and 14th Amendments to the United States Constitution for reasons of overbreadth and vagueness. Although not currently incarcerated, Petitioner faces the prospect of ten (10) to thirty (30) days in the Cumberland County Jail should her current appeal to the Pennsylvania Superior Court fail. She seeks, therefore, a writ of *habeas corpus* from this Court on the constitutional grounds alluded to previously.

This claim arose from Petitioner's arrest on October 1, 1979 for violation of the statute in question. She was convicted in the Court of Common Pleas of Cumberland County and appealed on the aforementioned constitutional grounds to the Pennsylvania Superior Court. That Court, per its opinion of September 3, 1982, ruled that the statute was constitutional and cited Pennsylvania decisional law[1] in support of its ruling. Thereafter, Petitioner attempted to challenge the constitutionality of the statute by requesting allowance of appeal to the Pennsylvania Supreme Court. The Pennsylvania Supreme Court declined to hear this appeal on January 18, 1983.

Petitioner then filed a second appeal in the Pennsylvania Superior Court. This second appeal did not raise a constitutional issue, but alleged violations of the Pennsylvania Sentencing Code. While this second appeal was pending, Petitioner filed an application for a writ of *habeas corpus* in this Court in which she resumed her claim of a constitutional defect in the statute. Following a recommendation of a United States Magistrate, we dismissed Petitioner's action without prejudice due to our perception that the pendency of her second appeal to the Pennsylvania Superior Court precluded, for the time being, federal *habeas corpus* relief. On July 5, 1984, the Court of Appeals for the Third Circuit reversed our judgment of dismissal. 744 F.2d 297. This reversal was predicated on the fact that the Pennsylvania Supreme Court, by its denial of *certiorari* on Petitioner's federal constitutional claim, had effectively foreclosed any hope Petitioner had of succeeding on this theory at the state level. Moreover, since Petitioner's remaining appeal to the Pennsylvania Superior Court had no constitutional aspect, the outcome thereof would shed no light on her claim that the statute which she was convicted under was constitutionally defective. Therefore, the Court of Appeals for the Third Circuit remanded this case to us for a determination as to the constitutionality of Title 18 Pa.C.S.A. § 5503(a)(3).

### II. FACTUAL SUMMARY

The incident which precipitated this claim occurred on September 28, 1979 in the Borough of Shippensburg. The record reveals that the following facts are undisputed. Petitioner was in the vicinity of Shoemaker's Bar on North Earl Street in Ship-

---

1. *Commonwealth v. Mastrangelo,* 489 Pa. 254, 414 A.2d 54 (1980).

pensburg when she came upon an altercation between one Tony Neil and four local police officers. As the police struggled to place handcuffs on the resisting Mr. Neil, who had been a high school classmate of the Petitioner, she took umbrage at what she regarded as the officer's use of excessive force and began villifying the officers. To be specific, she urged them to "let him go" and referred to them as "goddamn fucking pigs" several times in a voice loud enough to be heard by many members of a sizeable[2] crowd of onlookers. While the potential of this conduct to incite violence against the officers seems obvious, the arresting officers themselves testified that Petitioner's words had no visible effect on the crowd. Nevertheless, once they had subdued Mr. Neil, they also took Petitioner into custody and she was charged with violating the statute which is the focus of our inquiry.

### III. ARGUMENT

■ Petitioner attacks Title 18 Pa.C. S.A. § 5503(a)(3) on four (4) grounds: A) that it is unconstitutionally vague and overbroad on its face since it is not limited to "fighting words" as defined by the United States Supreme Court; B) that the term "obscene" as used in the statute is unconstitutionally vague and overbroad; C) that Petitioner's speech was neither obscene nor did it constitute "fighting words"; D) that the State courts erred in finding that the Petitioner's words created a clear and present danger of disorder. We consider these grounds seriatim.

We note, initially, that even fundamental rights, one of which is the freedom of expression as guaranteed by the First Amendment, may be abridged when a state can demonstrate a compelling interest in doing so. *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). We note, too, that all powers not delegated expressly to the Unit-

ed States are retained by the various states pursuant to the Tenth Amendment. Salient among these retained powers is the police power, that broad authority of the states to regulate the conduct of their citizens. This authority is so extensive that the public safety, health, morality, peace and quiet, and law and order do not exhaust its scope. *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). Thus, one may readily see that a citizen who challenges the constitutionality of a state statute enacted to implement this broad-based police power must carry a substantial burden.

■ Since Petitioner contends that one of her fundamental rights, the right to freely express herself, has been abridged by a statute which is defectively vague and overbroad on its face, we are compelled to examine the statute without reference to Petitioner's conduct. Even if we assume, *arguendo*, that the statute was constitutionally applied to Petitioner, she may still prevail by showing that the statute is susceptible to unconstitutional application to others. *Thornhill v. Alabama*, 310 U.S. 88, 98, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940). This idea of allowing a litigant to assert the rights of others is, of course, somewhat unusual since the general precept is that constitutional rights are personal and may not be asserted vicariously. *McGowan v. Maryland*, 366 U.S. 420, 429–30, 81 S.Ct. 1101, 1106–08, 6 L.Ed.2d 393 (1961). However, due to the perception that First Amendment rights are especially delicate, an exception has been carved out to allow litigants "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). It is plain, therefore, that Petitioner's challenge to the facial validity of the statute

---

**2.** Estimates varied from 30 to 50 people.

compels us to analyze it without reference to the conduct she manifested.

## A

■ We must now determine whether the challenged statute is so facially vague and overbroad as to be unconstitutional.[3] The doctrine of vagueness

> ... requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact to prevent arbitrary and discriminatory enforcement. Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.

*Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1246–47, 39 L.Ed.2d 605 (1974).

■ Since our review of cases cited by the Respondent persuades us that the courts of Pennsylvania have never provided a viable "narrowing interpretation" of this statutory subsection, it must stand or fall on its literal language. The portion of the statute at issue reads:

§ 5503. Disorderly conduct

. . . . .

(a) Offense defined. A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

. . . . .

(3) uses obscene language, or makes an obscene gesture;

. . . . .

Statutory language must, of course, be flexible to some degree to take into account the infinite diversity of human conduct. This is especially so in the criminal context.

> The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Colten v. Kentucky* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). Whether a statute provides the requisite "fair warning" can be determined from whether it does "give a person of ordinary intelligence a reasonable opportunity to know what is prohibited ..." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Thus, just as facial vagueness analysis forces us to ignore Petitioner's conduct, it forces us to ignore her level of intelligence as well.

Petitioner argues that since the statute purports to prohibit speech which does not constitute "fighting words", those which by their very utterance inflict injury or tend to incite an immediate breach of the peace, *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942), the statute attempts to prohibit protected speech. Moreover, Petitioner acknowledges that *Chaplinsky,* supra at 571–72, 62 S.Ct. at 768–69, authorizes states to regulate types of speech other than "fighting words", to wit:

> ... it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words ... It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that

---

**3.** We recognize that Petitioner challenges this statute on *both* vagueness and overbreadth grounds. However, as she points out in her brief (docket item number 23 at page 9), these "distinct analytical tools" frequently merge in the First Amendment context. *Lewis v. New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974). That is the case here. Any overbreadth of this statute will necessarily be a result of vagueness.

may be derived from them is clearly outweighed by the social interest in order and morality.

Respondent had seized upon this quotation to argue that Petitioner's interpretation of *Chaplinsky* is far too restrictive.

■ Petitioner attempts to discredit this broader view of *Chaplinsky* by showing that recent Supreme Court decisions, most notably *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), have limited its application to its "fighting words" aspect. This, Petitioner urges, can only mean that the other classes of speech which Mr. Justice Murphy stated were obviously subject to state regulation—lewd, profane, libelous, *obscene*—in *Chaplinsky* are now to be considered within the protection of the First Amendment. We cannot agree. Our reading of *Gooding*, supra, persuades us that the only reason for the majority's preoccupation with "fighting words" in that case was the singular reliance of the appellant on the proposition that the challenged Georgia statute was applicable only to "fighting words". Since it was a one dimensional argument, it provoked a one dimensional response from the Court. Neither *Gooding* nor its progeny expressly holds that the categories of unprotected speech enumerated in *Chaplinsky* have been restricted to "fighting words" alone. Moreover, we are loathe to find that the Supreme Court would have so drastically limited the police power of the States by implication.

■ Beyond the argument raging over the scope of *Gooding*, we are impressed by Respondent's argument that this statute is primarily designed to regulate conduct and that any abridgement of free speech caused thereby is both incidental and insubstantial. We note, too, that

> ... facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within

the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

*Broadrick*, supra, 413 U.S. at 615, 93 S.Ct. at 2917, citing *Alderman v. United States*, 394 U.S. 165, 174–75, 89 S.Ct. 961, 966–68, 22 L.Ed.2d 176 (1969).

■ Because our reading of the challenged Pennsylvania statute is consistent with Respondent's position that it is not designed to regulate "pure speech", but is designed, rather, to limit certain speech uttered with a particular intent, we find that it is not so substantially overbroad as to render it unconstitutional. The Supreme Court has "... repeatedly expressed its reluctance to strike down a statute on its face where there were a substantial number of situations to which it might be validly applied. Thus, even if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct ..." *Parker v. Levy*, 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974), citing *CSC v. Letter Carriers*, 413 U.S. 548, 580–81, 93 S.Ct. 2880, 2897–98, 37 L.Ed.2d 796 (1973). We conclude that, on its face, 18 Pa.C.S.A. § 5503(a)(3) is such a statute.

## B

■ Petitioner's second objection to this statute is predicated on the claim that the

word "obscene" as used therein is vague and overbroad. She opines that because the statute does not define "obscene" and the term has not been given a limiting construction by Pennsylvania Courts, speakers, policemen, and courts are left in suspense as to its parameters. Petitioner further characterizes § 5503(a)(3) as a "standardless sweep" of the type proscribed by the decision in *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

Respondent argues that the statute contains its own limiting language, an intent requirement, without which none of the subsections become operative. Thus, only obscene speech uttered with an intent to cause "public inconvenience, annoyance or alarm" or uttered in reckless disregard of the likelihood of such disruption is proscribed. Since the state has a compelling interest in preventing such breaches of the peace, Respondent contends that no obscene speech uttered under the circumstances described in the statute could possibly enjoy the protection of the First Amendment. We agree.

As previously noted, if we are to expect legislatures to exhibit total precision in drafting criminal statutes, few criminal statutes will survive. This statute, in our view, more than satisfies the "rough idea of fairness" mandated in *Colten*, supra. We have no reservation whatever that upon reading this statute the average person would have a very clear idea of what modes of conduct it prohibits.

### C

 Petitioner also argues that this statute was unconstitutionally applied to her because her words were neither obscene nor susceptible to being characterized as fighting words. A finding that her words fit into either category would be fatal to this portion of her claim. Since we find that her words were "fighting words" as defined in *Chaplinsky* and refined in

*Gooding*, we need not reach the issue whether they were obscene.

Petitioner's position is that *Gooding* announced a revision in the standard for deciding whether speech constitutes "fighting words". The new standard is a subjective one. We are no longer to consider whether certain words would likely provoke a violent reaction from an *ordinary citizen*. We are, rather, to determine whether certain words would likely provoke a violent reaction from the *addressee*. Petitioner argues that since her words were addressed to police officers—individuals who by virtue of their occupation are trained to remain dispassionate under pressure—that we cannot logically conclude that her words were likely to provoke violence from these addressees.[4] In other words, Petitioner seems to be implying that it is virtually impossible to find the phrase which, when addressed to a police officer, will constitute "fighting words". Common sense dictates otherwise.

Police officers, notwithstanding their devotion to their duty and the excellence of their training, are human beings and subject to the same failings as butchers, bakers and candlestick makers. We do not see the logic in finding that police officers can be expected to remain stoic in the face of vitriolic comments that one would expect to elicit violence from someone else. Moreover, we think it contrary to public policy to send out a signal to the general public that policemen are fair game for any amount of verbal abuse some may choose to heap upon them. In short, if calling someone a "goddamn fucking pig" does not exemplify "fighting words", we are hard pressed to imagine what words could be so construed.

### D

 Petitioner's final basis for attacking this statute is that it could not be used to declare her a disorderly person due to the fact that the trial court perceived her

---

**4.** Petitioner also contends that she did not address any of the officers individually. Even were that so, however, we conclude that any of them could have logically perceived that he was being addressed.

conduct as creating "a clear and present danger that bystanders may have been enticed into interfering with the arrest that was taking place." The trial court's unfortunate choice of these words provoked Petitioner to a lengthy explication of the "clear and present danger" doctrine. This doctrine, most recently expressed in *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 320 (1969), sets out a test for determining when protected speech becomes advocacy of illegal action. Since we have already found that Petitioner's speech was of the unprotected variety, we need not consider whether she was encouraging others to engage in illegal activity.

## IV

In summation, we find: (a) that the challenged statute is not facially vague or overbroad; (b) that the word "obscene" as used therein is not vague or overbroad; (c) that the statute was constitutionally applied to Petitioner; and (d) that the "clear and present danger" doctrine has no application to this case. An appropriate *Order* shall be issued.

## ORDER

AND NOW, this 11th day of March, 1985, IT IS ORDERED as follows:

1. Pursuant to the remand of this case by the Third Circuit Court of Appeals, we declare that 18 Pa.C.S.A. § 5503(a)(3) passes constitutional muster and deny Petitioner's application for a writ of *habeas corpus.*

2. Judgment in Respondents' favor is hereby entered and the Clerk of Courts is directed to close this case.