Johnie F. KARR, Plaintiff-Appellant,

v.

Uniform Patrolman SMITH and Officer L.N.U. (Mark Lemon), Kansas City, Kansas, Police Department, Defendants-Appellees.

No. 84–1867.

United States Court of Appeals,
Tenth Circuit.

Oct. 11, 1985.

J.R. Russell, Kansas City, Kan., for plaintiff-appellant.

Harold T. Walker, Asst. City Atty., Kansas City, Kan., for defendants-appellees.

Before BARRETT and SETH, Circuit Judges, and CHILSON *, District Judge.

CHILSON, District Judge.

Pursuant to a stipulation of the parties, the trial court dismissed the action against the Defendant, City of Kansas City, Kansas.

The defendant, "Officer L.N.U., Kansas City, Kansas, Police Department", is identi-

* Hatfield Chilson, Senior Judge, United States District Court for the District of Colorado, sit-   ting by designation.

fied in the record as Mark Lemmon, a Police Officer of the Kansas City, Kansas Police Department.

On April 22, 1982, two Kansas City, Kansas, Police Officers, J.B. Smith and Mark Lemmon, were ordered by their superior officer, Sergeant Ronald Miller, to arrest the plaintiff-appellant, Karr, and book him into police headquarters on a charge of destruction of property.

J.B. Smith and Lemmon, on April 22, arrested Karr, took him to police headquarters, and booked him as ordered.

Approximately one year later, on April 19, 1983, Karr commenced this action pursuant to 42 U.S.C. Sec. 1983, alleging his arrest was unlawful and in violation of his constitutional rights and seeking money damages from officers Smith and Lemmon and the City of Kansas City.

Sergeant Miller, who ordered the arrest, was not named as a defendant.

A jury trial was commenced in the United States District Court for the District of Kansas on May 21, 1984. Following plaintiff's case-in-chief, the trial court granted the defendants' oral motion for a directed verdict and entered a judgment of dismissal of the action. Plaintiff appeals.

The relevant facts are undisputed. Plaintiff Karr was hired by Crown Leasing to operate a tractor trailer truck to haul liquid products on behalf of another trucking company, American Bulk Transport. On April 20, 1982, Karr drove his truck into Kansas City, Kansas carrying a load of toxic liquid material.

On the next day, April 21, 1982, Karr met his supervisor, Bill Barnett, and told him that he was going to quit if he did not get additional safety equipment, such as rubber boots and gloves, for handling the toxic material. Barnett declined to give Karr any additional equipment whereupon Karr quit. At Barnett's request, Karr parked the truck in the parking lot of the Kaw Valley Inn Motel in Kansas City, Kansas.

Shortly thereafter, on the same day, Karr telephoned American Bulk Transport and spoke with E.R. Miller regarding the balance due him for his work, amounting to approximately $1,500. An argument ensued between Karr and E.R. Miller and Karr became very angry.

Eventually, Karr and Glynn Tibbits, a fellow truck driver who also quit under similar circumstances, met with E.R. Miller at the Kaw Valley and delivered to E.R. Miller various documents and credentials pertaining to their trucks. When Karr asked for his money, Miller replied he would pay when he got ready.

Later that day, Kansas City, Kansas police officers, under the supervision of Sergeant Ronald Miller, were dispatched to the Kaw Valley Inn to investigate a destruction of property report. Upon investigation, the officers discovered that the tires of the trucks had been slashed and that the tanker valves had been opened enough to allow hazardous liquid material to leak out at a slow rate. At that time, E.R. Miller, who was present, told Sergeant Miller that he knew that Karr and Tibbits caused the damage to the trucks because they told him, E.R. Miller, earlier that day, that they were going to vandalize the trucks.

E.R. Miller gave Sergeant Miller a description of Karr and Tibbits. Sergeant Miller determined, based on his own observation, that the destruction had been caused intentionally and amounted to a felony because the damage exceeded $100 in value. Based on these observations and the information obtained from E.R. Miller, Sergeant Miller, on April 21, 1982, filed a felony police report with the Police Department for criminal destruction of private property. Based on this police report, a "pick-up order" was issued ordering the arrest of Karr and Tibbits.

On the next day, April 22, 1982, Karr contacted the police department to arrange for police officers to be present at the Kaw Valley Inn while Karr and Tibbits removed their personal belongings from the trucks. Officers Lemmon and Smith were dispatched to the Kaw Valley Inn pursuant to

Karr's request. Their supervisor and superior officer was Sergeant Miller.

Upon their arrival at the Inn, Karr told Lemmon and Smith that he had an argument with his employer and wanted the police officers present when he removed his personal belongings from the truck so that he would not be accused of any improprieties.

At the request of the police radio dispatcher, Officer Smith gave Karr's and Tibbits' names and descriptions to the dispatcher. At about the same time, Sergeant Miller was notified that Karr and Tibbits had returned to the Kaw Valley Inn and that Officers Lemmon and Smith were present at the Inn. At this time, Sergeant Miller contacted E.R. Miller to confirm the information previously received. E.R. Miller reiterated that he was sure Karr and Tibbits had done the damage to the trucks, he wanted them arrested and intended to prosecute them. Thereupon, Sergeant Miller, via police radio, advised Lemmon and Smith of the pick up order issued the day before and directed them to arrest Karr and Tibbits. Acting on these orders, Officers Lemmon and Smith arrested Karr and Tibbits, transported them to the City Jail and booked them on the destruction of property charges. Thereafter, Karr was interviewed by a Detective Smith and was released. No formal complaint was ever filed against him.

The trial court held that, based on these undisputed facts which were established at trial, probable cause for the arrest of Karr existed as a matter of law. The court directed a verdict in favor of Officers Lemmon and Smith and dismissed the complaint. The issue presented in this appeal is whether the trial court erred by granting the defendants' motion for a directed verdict based upon the finding that probable cause for the arrest was established as a matter of law.

■ The constitutional validity of a warrantless arrest depends upon whether the arresting officer had probable cause. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed. *U.S. v. Miller,* 532 F.2d 1335, 1337 (10th Cir.1976), *cert. denied,* 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 106 (1976); *Murray v. U.S.* 351 F.2d 330, 333 (10th Cir.1965), *cert. denied,* 383 U.S. 949, 86 S.Ct. 1207, 16 L.Ed.2d 211 (1966). This rule of probable cause has been described as a "practical, nontechnical conception affording the best compromise that has been found for accomodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar v. U.S.,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Under the "fellow officer" rule, "probable cause is to be determined by the courts on the basis of the collective information of the police involved in the arrest, rather than exclusively on the extent of the knowledge of the particular officer who may actually make the arrest." *U.S. v. Troutman,* 458 F.2d 217, 220 (10th Cir. 1972). See also *State v. Clark,* 218 Kan. 726, 544 P.2d 1372 (1976), *cert. denied,* 426 U.S. 939, 96 S.Ct. 2657, 49 L.Ed.2d 392 (1976) ("[T]he collective information of police officers and law enforcement officers involved in an arrest can form the basis for probable cause, even though that information is not within the knowledge of the arresting officer.") The burden of going forward with evidence establishing the existence of probable cause is on the defendant in a 1983 action.

■ Application of the foregoing principles to the facts in the instant case leads us to conclude, as did the trial court, that probable cause for the arrest of plaintiff Karr was established at trial as a matter of law. The evidence showed that Sergeant Miller was present at the Kaw Valley Inn and saw the damage to the trucks. He saw that the tires had been slashed and the valves opened to allow hazardous material

to leak out. Based on his observations, he determined that this damage had been caused intentionally and not by accident. E.R. Miller of American Bulk Transport, owner of the truck and employer of plaintiff Karr, told Sergeant Miller that he knew Karr and Tibbits had caused the damage. E.R. Miller said that a payroll dispute had occurred earlier that day and that the two men had threatened to vandalize the trucks. E.R. Miller said he was willing to name the two men as suspects in a report and intended to pursue prosecution of the case against them. Based on this information, Sergeant Miller filed a police report and a pick-up order was issued. Officers Lemmon and Smith arrested Karr based on the orders of Sergeant Miller.

The facts within Sergeant Miller's knowledge were sufficient to warrant a prudent man in believing that an offense had been committed. There is no requirement that Sergeant Miller must have been actually present while the felony was being committed; it is sufficient for him to rely on the information he received from E.R. Miller. See *Daniels v. U.S.*, 393 F.2d 359, 361 (D.C.Cir.1968) ("It is enough that the police officer initiating the chain of communication ... received his information from some person ... who it seems reasonable to believe is telling the truth.") From the facts established at trial, *i.e.*, the payroll dispute and the threats of vandalism, it seems reasonable to assume that E.R. Miller was telling the truth. See *McKinney v. George*, 556 F.Supp. 645, 648 (N.D.Ill.1983), *aff'd*, 726 F.2d 1183 (7th Cir.1984) ("In the case of information supplied by an identified ordinary citizen, reliability is presumed.")

Under the fellow officer rule, Officers Lemmon and Smith are deemed to have whatever knowledge Sergeant Miller had. Therefore, the probable cause which existed for Sergeant Miller's police report extends to the arrest made by Officers Lemmon and Smith.

In his brief, appellant's main argument is that the trial court erred in finding probable cause as a matter of law because the officers making the arrest had no independent knowledge of the offense. In support of this argument, appellant cites portions of the trial transcript in which Officers Lemmon and Smith acknowledge that they never saw Karr commit a crime, never saw the damage to the trucks and arrested Karr pursuant to the orders of Sergeant Miller. This argument is without merit because it fails to consider the fellow officer rule which charges Lemmon and Smith with the knowledge of Sergeant Miller.

A directed verdict is appropriate where, viewing the evidence in the light most favorable to the non-moving party, "there are no controverted issues of fact upon which reasonable men could differ." *Martin v. Unit Rig & Equipment Co., Inc.*, 715 F.2d 1434, 1438 (10th Cir.1983). In view of the undisputed facts established at trial, we believe that the evidence supports only one conclusion, which is that the arrest of plaintiff Karr was lawful because probable cause existed.

We hold that the trial court did not err in granting a directed verdict for the defendants and entering judgment of dismissal of the action.

Accordingly, for the reasons stated in this opinion, the decision of the district court is AFFIRMED.