Ward A. THOMPSON, Plaintiff–
Appellant,

v.

CITY OF LAWRENCE, KANSAS; Ron
Olin, Chief of Police; Jerry Wells, Dis-
trict Attorney; Frank Diehl, David
Davis, Kevin Harmon, Mike Hall, Ray
Urbanek, Jim Miller, Bob Williams,
Craig Shanks, John Lewis, Jack Cross,
Catherine Kelley, Dan Ward, James Hal-
ler, Dave Hubbell and Matilda Woody,
Defendants–Appellees.

Frances S. WISDOM, Plaintiff–Appellant,

v.

CITY OF LAWRENCE, KANSAS; Ron
Olin, Chief of Police; David Davis, Mike
Hall, Jim Miller, Bob Williams, Craig
Shanks, John L. Lewis, Jack Cross, Kev-
in Harmon, Catherine Kelley, Dan Ward
and James Haller, Jr., Defendants–Ap-
pellees.

Nos. 94–3200, 94–3203.

United States Court of Appeals,
Tenth Circuit.

July 5, 1995.

Patrick S. Levy, Lawrence, KS, for plaintiffs-appellants.

Gerald L. Cooley of Allen, Cooley & Allen, Lawrence, KS, for defendants-appellees City of Lawrence, Ron Olin, Kevin Harmon, Mike Hall, Ray Urbanek, Jim Miller, Craig Shanks, John Lewis, Jack Cross, Catherine Kelley, Dan Ward, and James Haller, Jr.

Donald Patterson of Fisher, Patterson, Sayler & Smith, Topeka, KS, for defendant-appellee David Davis.

Thomas D. Haney of Porter, Fairchild, Wachter & Haney, Topeka, KS, for defendants-appellees Wells and Diehl.

Before KELLY and BARRETT, Circuit Judges, and OWEN, District Judge.[†]

PAUL KELLY, Jr., Circuit Judge.

Plaintiffs–Appellants Ward A. Thompson and Frances S. Wisdom appeal from the district court's order denying their motion

---

[†] Honorable Richard Owen, Senior United States District Judge for the Southern District of New York, sitting by designation.

for reconsideration and granting Defendants–Appellees' motion for summary judgment. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

*Background*

In December 1991, Theodore Bratton was serving a one-year jail term for misdemeanor theft and was concurrently on parole for a prior burglary conviction. While on work release, Bratton visited Plaintiff Thompson at A.J.'s Bonding in order to discuss a $1300 debt which Bratton owed to Thompson for past bail bonds. Thompson had obtained a judgment on the bonds against Bratton and his mother, who co-signed the bonds. During the meeting, Thompson told Bratton that he was interested in obtaining a riding lawn mower and that if Bratton procured a mower for Thompson, the debt would be satisfied. Previously, Bratton had mentioned that his uncle possessed a riding mower and that Bratton could obtain such a mower for Thompson.

When Bratton returned to jail, he telephoned Defendant Officer Davis of the Lawrence Police Department ("LPD") to see if Davis might be interested in his information regarding Thompson. The following day, Davis and Defendant LPD Officer Lewis met with Bratton and devised a plan to conceal a recording device on Bratton and have him engage Thompson in a conversation regarding riding mowers. That same day, Davis received permission for Bratton to serve as an informant from the court services officer in charge of work and school release.

Subsequently, the plan to record a conversation between Thompson and Bratton was executed. On the recorded tape, Thompson told Bratton that he "[didn't] want to know where [the mower] came from" but that Bratton should bring the mower to him and he would "get rid of it the next day." LPD officers concluded that Thompson expected Bratton to procure a stolen mower and give it to him.

As a result of the recording, LPD officers decided to deliver a "stolen" riding mower to Thompson. The LPD borrowed a mower from a local farm equipment dealer. Bratton delivered the mower to Thompson, engaged

him in another recorded conversation, and then returned to the Law Enforcement Center. Meanwhile, LPD officers stationed around A.J.'s Bonding failed to notice that Plaintiff Wisdom and her son had entered the establishment. After Bratton left the premises, the armed officers entered A.J.'s Bonding.

Once inside, the officers handcuffed Thompson and Wisdom. Although Davis gave Thompson *Miranda* warnings, Thompson waived his rights and told Davis that he knew Bratton was going to steal a riding lawn mower. Davis then asked for and received Thompson's consent to search the premises. While a search of the premises ensued, Wisdom and her son were released. Thompson, however, was arrested and subsequently charged with solicitation of theft. All charges against him were eventually dismissed without prejudice.

Thompson and Wisdom brought this suit alleging civil rights violations and various tort violations under Kansas law. The Defendants moved for partial judgment on the pleadings, which the district court granted. The Plaintiffs filed two motions for reconsideration, both of which the district court denied. Upon motion by Defendants, the district court granted summary judgment for the remaining claims. Plaintiffs appeal, arguing that the district court erred in 1) overruling Plaintiffs' motions to reconsider, 2) analyzing qualified immunity claims in the summary judgment context under an improper standard, 3) improperly finding that officers could have reasonably believed that warrantless search and seizure was lawful, 4) improperly characterizing Plaintiff Thompson's claims against Defendants Wells and Diehl, 5) improperly dismissing Plaintiff Wisdom's claims for unlawful seizure and excessive force, 6) improperly dismissing Plaintiff Thompson's claims of municipal liability and conspiracy, and 7) improperly dismissing Plaintiffs' state law and punitive damage claims.

I. Motion to Reconsider

We review the district court's denials of the motions for reconsideration for an

abuse of discretion. *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir.1988). Under Kansas Local Rule 206(g), failure of a party to file a timely response constitutes a "waiver" of the right to file a response, "except upon a showing of excusable neglect." D.Kan.Civ.R. 206(g).

Here the Plaintiffs failed to file a response to Defendants' motion for partial judgment on the pleadings. Plaintiffs' counsel claims that the response was mailed, however neither the court nor opposing counsel (four in number) have any record of receiving the document. Moreover, the district court found unbelievable the statements of Plaintiffs' counsel regarding the purported mailing. Aplt.App. at 117.

The district court ultimately held that there was no basis to believe that Plaintiffs actually responded to Defendants' motion. Aplt.App. at 103. We agree. Further, Plaintiffs have failed to allege or prove any excusable neglect, mistake, inadvertence, or surprise. *See* Fed.R.Civ.P. 60(b)(1). In light of counsel's contumacious behavior, we find no abuse of discretion in the district court's denial. *Compare Hancock*, 857 F.2d at 1396 (holding that because counsel's mistake was unintentional and not contumacious in nature, trial judge abused discretion in denying motion to reconsider).

## II. Standard of Review

■ We review a grant of summary judgment de novo, applying the same standard used by the district court under Fed. R.Civ.P. 56(c). *McDermott v. Midland Management, Inc.*, 997 F.2d 768, 770 (10th Cir.1993). We review qualified immunity claims in the summary judgment context under the framework set out in *Woodward v. City of Worland*, 977 F.2d 1392, 1396–97 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993). *See also Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir.1993).

■ First the defendant must adequately raise the defense of qualified immunity. Then the plaintiff must show that the law was clearly established when the alleged violation occurred and must present facts or allegations sufficient to show that the official violated that law. The defendant then has the usual summary judgment burden of establishing that there is no genuine controversy over a material fact which would defeat his claim for qualified immunity and that he is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). We view the record in the light most favorable to the party opposing summary judgment. *McDermott*, 997 F.2d at 770.

## III. Warrantless Arrest in a Public Place

■ Warrantless arrest is permissible if there is probable cause to believe that a person has committed a crime. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Under a § 1983 claim of unlawful arrest, Defendant police officers lose their shield of qualified immunity only if they could not have believed that Thompson's arrest was based on probable cause. *Jones v. City and County of Denver*, 854 F.2d 1206, 1210 (10th Cir.1988). Probable cause exists if the arresting officer has knowledge of facts and circumstances which are reasonably trustworthy and sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense. *Id.* Under Kansas law, the determination of probable cause at a preliminary hearing is prima facie evidence of probable cause, which may be overcome by a preponderance of the evidence. *Swanson v. Fields*, 814 F.Supp. 1007, 1014 (D.Kan), *aff'd*, 13 F.3d 407 (10th Cir. 1993).

■ The state district court judge made a finding of probable cause at Thompson's preliminary hearing following his arrest. Thompson has failed to overcome this finding by a preponderance of the evidence. Moreover, the LPD possessed recorded conversations between Bratton and Thompson regarding the unlawful acquisition of the riding mower and knew that Thompson had accepted the purportedly stolen mower. In light of these factors, we find the existence of probable cause.

The potential unreliability of Bratton was compensated for by the recorded conversa-

tions and does not defeat the existence of probable cause. Similarly, our finding of probable cause is not affected by the failure of the LPD to obtain permission from Bratton's parole officer to use him as a confidential informant.

 Thompson's argument that his arrest was unlawful because the LPD entered A.J.'s Bonding without a warrant fails. Warrantless arrest based upon probable cause may take place in a public place. *See United States v. Watson,* 423 U.S. 411, 423–24, 96 S.Ct. 820, 827–28, 46 L.Ed.2d 598 (1976); *see also United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976). "The necessary inquiry ... [is] not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." *Watson,* 423 U.S. at 417, 96 S.Ct. at 824–25. We have already established that probable cause existed. Moreover, A.J.'s Bonding was open to the public and there is no evidence that customers needed permission to enter the business. Consequently, we hold that A.J.'s bonding was a public place for purposes of the arrest. *See Dailey v. Lyles,* 785 F.Supp. 812, 820 (W.D.Mo.1992), *aff'd,* 993 F.2d 175 (8th Cir.1993).

 Thompson further argues that the warrantless search of A.J.'s Bonding was *per se* unreasonable. A search may be conducted without a warrant following voluntary consent by someone with authority over the place searched. *United States v. Rodriguez–Garcia,* 983 F.2d 1563, 1567 (10th Cir.1993). Defendant police officers maintain their shield of qualified immunity from liability for warrantless searches as long as a reasonable officer could have believed that the warrantless search was lawful. *Jones,* 854 F.2d at 1208 (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)).

 Thompson gave consent to search within earshot of at least three officers, after he was read his *Miranda* rights. Aplee. Davis App. at 281, 303, 329. He admits that he did not place any restrictions on the search of the premises. Aplt.App. at 501 n. 13. Moreover, we find no evidence of coer-

cion or duress. The fact that Thompson was in police custody did not render him incapable of giving voluntary consent to a search. *Rodriguez–Garcia,* 983 F.2d at 1567. Thompson has failed to present evidence sufficient to show that his consent was not freely given, thus we hold that the search was lawful. Moreover, we find no evidence which leads us to believe that the arrest and search were merely a pretext to look for drugs.

## IV. Excessive Force Claim of Thompson

 We analyze Thompson's claim of excessive force by determining whether the officers' actions were objectively reasonable in light of the facts and circumstances surrounding them. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Thompson argues that the officers used excessive force by entering the premises carrying weapons, making Thompson lay face down on the floor, handcuffing his hands behind his back, and "yanking" his wrists in order to raise him to his feet despite his protestations of an injured shoulder. Aplt.Brief at 23.

 It is well established that the right to arrest an individual carries with it the right to use some physical coercion to effect the arrest. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. We hold that it was not unreasonable for the officers to carry weapons when they entered the premises of Thompson, a suspected felon with a reputation for possessing firearms. *See* Aplee. Davis App. at 315, 372. We further hold that it was not unreasonable for the officers to take control of a potentially dangerous situation by ordering Thompson to lay on the floor and handcuffing him. Moreover, the record does not support Thompson's contention that he was "yank[ed]" to his feet. Rather, in deposition testimony, Thompson stated that he was "lifted" or "raised" from the floor and that he did not think that he cried out in any way during the process. Aplee.Davis App. at 393–94. We hold that the officers' actions were not unreasonable given the totality of the circumstances.

### V. Prosecutorial Claims

 Thompson alleges that Defendants Wells and Diehl are liable for their involvement in the reverse sting operation targeting him. Thompson, however, fails to articulate a legal theory providing a basis for the alleged liability. He faults the district court for construing his claim as one of malicious prosecution, but does not advance any alternative theories which might constitute a violation of his rights. In the face of such vague allegations, we cannot fault the district court for its judgment. Moreover, since Thompson has failed to show that Wells and Diehl have disturbed his rights, we need not address the issue of their possible immunity.

### VI. Excessive Force and Unreasonable Seizure Claims of Wisdom

 Wisdom alleges that her seizure by officers was unreasonable. Wisdom was at A.J.'s Bonding when officers entered the establishment, and was handcuffed and detained by police for a short period of time. The determination of reasonableness of a seizure involves the balancing of the individual's Fourth Amendment interests against the importance of the governmental interest at stake. *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985).

When the officers entered A.J.'s Bonding, they were unaware that Wisdom would be present and were equally unaware of the nature of her relationship to Thompson. We have already established that the officers had probable cause to arrest Thompson based on a suspected crime. The governmental interest in securing the area around Thompson and protecting officers from potential danger is sufficient to justify the temporary detention of Wisdom. *See United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir.1993) ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself. . . ." (citations omitted)).

Wisdom further alleges that the officers' actions in "shov[ing]" her to the floor, drawing a weapon on her, and handcuffing her, constituted excessive force. Aplt.Brief at 25. Given the volatility of the situation, we hold that it was objectively reasonable for the officers to temporarily restrain Wisdom, whose relationship to Thompson and possible reaction to the situation were unknown. *See Graham*, 490 U.S. at 396, 109 S.Ct. at 1872.

### VII. Municipal and Conspiracy Claims

 Thompson alleges that the City of Lawrence ("City") is liable under 42 U.S.C. § 1983 for the acts of Defendant Ron Olin, the chief of the LPD. The City may not be held liable under this theory, however, if there are no underlying constitutional violations by its officers. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.1993) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986)). Because we have already determined that Thompson has failed to show that he was deprived of any of his constitutional rights, this claim fails.

 Thompson also claims that Chief Ron Olin is liable for his alleged failure to train and supervise the LPD officers. A suit against a city official in his official capacity is no different from a suit against the City itself. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Thus the rationale which defeated the claim against the City also defeats the claim against Olin. *See Hinton*, 997 F.2d at 783.

 Thompson further alleges that Defendant police officers are liable under a § 1983 conspiracy theory. In order to succeed on this claim, Thompson must prove both the existence of a conspiracy and the deprivation of a constitutional right. *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir.1990). We have already determined, however, that Thompson has failed to establish the existence of any constitutional violations. Since an essential element of the conspiracy claim is absent, the allegation fails.

### VIII. State Law and Punitive Damages Claims

Plaintiffs' contention that the dismissal of their state law and punitive damages claims should be reversed is supported solely by the

argument that reversal of the dismissal of Plaintiffs' constitutional claims requires reversal of these claims as well. Consequently, because we affirm the lower court's dismissal of Plaintiffs' constitutional claims, we also affirm the dismissal of Plaintiffs' state law and punitive damages claims.

AFFIRMED.