David Martin PRICE and Rosemary Denise Price, Plaintiffs,

v.

Officer William COCHRAN, et al., Defendants.

CIVIL ACTION No. 00–2193–GTV.

United States District Court, D. Kansas.

June 6, 2002.

---

David M. Price, Topeka, KS, pro se.

Rosemary Denise Price, Topeka, KS, pro se.

Edward L. Bailey, Susan L. Mauch, Cosgrove, Webb & Oman, Topeka, KS, David D. Plinsky, Office of U.S. Atty.,

Topeka, KS, for William E. Cochran, Helmkamp, Wempe, Grayson.

John J. Knoll, Office of City Attorney, City of Topeka, Topeka, KS, for Ed Klumpp.

Mary B. Mudrick, Office of City Attorney, City of Topeka, Topeka, KS, for Brenden Long.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiffs David and Rosemary Price bring this § 1983 suit *pro se* against four Topeka, Kansas police officers: Defendants William Cochran, Robert Helmkamp, Bill Wempe and Mark Grayson. Plaintiffs allege that the officers violated Plaintiffs' Fourth and Fourteenth Amendment rights by falsely arresting and maliciously prosecuting Mr. Price, falsely imprisoning Mrs. Price, and illegally searching their home. The case is before the court on Defendants' Motion for Summary Judgment (Doc. 141). For the reasons stated below, the court grants Defendants' motion.

Also before the court is Plaintiffs' Objection, Under Fed.R.Civ.P. 56(d)(e)(g) to the Summary Judgment [Filed] by the Defendants (Doc. 147). To the extent that Plaintiffs' "objection" is intended to be a motion asking for relief from summary judgment, such objection is necessarily overruled in light of the court's ruling on Defendants' summary judgment motion. To the extent that Plaintiffs ask the court to find that Defendants submitted affidavits in bad faith under Fed.R.Civ.P. 56(g), Plaintiffs' objection (Doc. 147) is overruled. Plaintiffs fail to provide any evidence upon which the court could base such a finding.

## FACTUAL BACKGROUND

As an initial matter, the court notes that Plaintiffs have failed to properly controvert Defendants' facts. Absent proper opposition, the court considers Defendants'

facts admitted. D. Kan. R. 56.1(a) ("All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."). "[T]he court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e)." *Hammad v. Bombardier Learjet, Inc.*, 192 F.Supp.2d 1222, 1228 (D.Kan.2002) (citing Fed.R.Civ.P. 56(e); D. Kan. R. 56.1; 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2722 (2d ed.1994) (footnotes omitted)).

Plaintiffs attempt to controvert Defendants' facts with unsupported and irrelevant statements and arguments. In addition, throughout their brief, they make references to information contained in unauthenticated documents. While a court will liberally construe a *pro se* litigant's pleadings, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), a *pro se* litigant is still expected to follow fundamental procedural rules, *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir.1994); see also *Gorsline v. United States Dep't of Defense*, No. 94–3152, 1994 WL 722943, at *3 n. 4 (10th Cir. Dec.20, 1994) ("The latitude given for a litigant's *pro se* status does not require the court to formulate arguments or evidence."); *Cooper v. Davies*, No. 94–3116, 1994 WL 454532, at *1 (10th Cir. Aug.17, 1994) ("The relaxed treatment to which *pro se* cases are entitled does not excuse the requirement for production of evidence."). The court deems Defendants' facts admitted, and considers only those facts submitted by Plaintiffs that are properly supported by authenticated documents or affidavits.

At about 8:45 p.m. on May 19, 1998, Plaintiff Rosemary Price called the Topeka Police Department, complaining of an indecent exposure incident. Officers were dispatched in response to the call. Before the officers arrived, the Topeka Police Department received another call regarding a disturbance in the Prices' neighborhood. During the second phone call, the dispatcher heard gunshots over the phone line. Officer Pat McLaughlin, who is not a Defendant in this case, was advised over the radio that the description of the suspect in the shooting was a white male with no shirt, who was balding on the top of his head with red hair on the sides. Officer McLaughlin recognized the description as matching that of Plaintiff David Price, in individual with whom Officer McLaughlin had dealt in the past.

Police officers arrived at the Price home, located at 3121 SE Fremont, and at a gas station down the street, where the alleged victims of the shooting had fled. The alleged victims, five neighborhood teenage boys, gave the following rendition of the disturbance to Defendant Cochran: Antonio Thomas and Mike Thomas, the two oldest boys, said that they were preparing to leave 3120 SE Fremont in a car driven by Bawndi Edgett when Mr. Price started yelling at them. Antonio said that Mr. Price wanted to fight him. After Mike told Mr. Price that he was not going allow Mr. Price to fight Antonio, Mr. Price struck Mike in the jaw with his fist. Antonio then grabbed a cooler lid and struck Mr. Price in the head with it. Antonio and his brothers began throwing rocks at Mr. Price and his son. Mr. Price yelled that he "had something for them" and went into his house. Antonio stated that a few minutes later, Mr. Price came out of his house with a gun and fired a shot in the air. He then fired two more shots. No one was hit, and the boys got in Ms. Edgett's car and left.

Defendant Cochran interviewed Antonio and Mike separately, and their stories were consistent. When later interviewed by Defendant Grayson, they repeated the same version of the events, as did the other boys. Ms. Edgett corroborated the boys' story. Defendant Cochran also examined Mike's lip, and saw that it was swollen and that there was a fresh cut on the inside. The appearance of Mike's lip further corroborated the boys' version of the events.

Defendant Wempe interviewed two independent witnesses, Allen and Adrian Perkins, residents of 3125 SE Fremont. Allen Perkins stated that he heard the disturbance between Mr. Price and the boys, and Adrian Perkins stated that he observed the disturbance. Both stated that they saw Mr. Price come into the street and fire two shots in the air.

Another independent witness, Rocky Chilson, told Officer McLaughlin that he did not see Mr. Price with a gun, but that he was inside his house at 3116 SE Fremont when he heard two gunshots. Mr. Chilson stated that he did not go outside until after the gun had been fired.

Officer McLaughlin interviewed Mr. and Mrs. Price. Both denied that Mr. Price fired a gun. Mr. Price maintained that he was mowing his backyard the entire time. Mrs. Price stated that they did not even have a gun in the house. Mrs. Price later testified in affidavit that she "overheard an Officer say a woman stated she 'didn't see David with a gun,' along with another witness, but the Officer stated that he 'didn't want to take statements from them.'"

At some point, Mrs. Price observed Defendant Cochran looking for shell casings in the front yard and peering into the living room. She also saw Defendant Helmkamp looking in the front yard near the sidewalk for shell casings and Defendant Wempe on the side of the house and

in back "looking at the ground and else-where on the house." Finally, she saw Defendant Grayson taking pictures of rocks and looking for shell casings in the front yard of the house.

After the Prices and the witnesses had been interviewed, Defendant Grayson arrested Mr. Price for aggravated assault and battery. The officers asked the Prices for consent to search their home for a gun, but the Prices refused. When the Prices refused consent, the officers secured the house and would not let anyone on the property. Defendants Cochran, Helmkamp and Grayson told Mrs. Price that she would not be allowed to go into the house until after a search warrant was presented. Defendant Cochran told Mrs. Price that he wanted her to stick around to answer any questions. Later, Mrs. Price asked the officers if she could use the restroom. She wanted to use her own restroom because, as she testified in deposition, "I didn't want to leave my home. In other words, I didn't want to leave the premises...." Subsequently, in an affidavit, she testified, "At this time Officer Cochran advised me not to leave as he may have other questions for me. I felt that this was a direct Police Order, therefore, I was fearful of being arrested if I did not comply." Mrs. Price was allowed to enter her home with an escort to use the restroom, get a drink, and tend to the pets.

About four hours after the initial disturbance call was placed to the police, the search warrant was executed. No weapons were found, but a .22 caliber bullet was found on the nightstand next to the bed.

On July 9, 1998, the Honorable Jacqueline Thornton, Osborn County Magistrate Judge assigned to Shawnee County, made a finding of probable cause with regard to Mr. Price's criminal charges and bound Mr. Price over for trial. The case was dismissed on the date of trial, however, because no witnesses appeared for the trial.

## STANDING AND PERSONAL PARTICIPATION

It is unclear from the pretrial order whether both Plaintiffs seek to recover on all of their claims. To the extent that they do, the court questions whether Mrs. Price has standing to challenge Mr. Price's arrest or prosecution and whether Mr. Price has standing to bring a claim for the false imprisonment of Mrs. Price. The court has a duty to address standing *sua sponte* because "it involves a constitutional limitation on a federal court's jurisdiction." *Skrzypczak v. Kauger,* 92 F.3d 1050, 1052 (10th Cir.1996). " '[F]ederal courts are under an independent obligation to examine their own jurisdiction.' " *Id.* (quoting *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)).

It is well established that "a section 1983 claim must be based upon the violation of [the] plaintiff's rights, and not the rights of someone else." *Archuleta v. McShan,* 897 F.2d 495, 497 (10th Cir.1990) (citing *Dohaish v. Tooley,* 670 F.2d 934, 936 (10th Cir.1982)). Plaintiffs' false arrest and malicious prosecution claims only contain allegations that Mr. Price's rights were violated. Plaintiffs' false imprisonment claim only contains allegations that Mrs. Price's rights were violated. Thus, to the extent that Mrs. Price seeks to recover on the false arrest and malicious prosecution claims and to the extent that Mr. Price seeks to recover on the false imprisonment claim, the court dismisses their claims based on lack of standing.

On a similar note, the court recognizes that all four Defendants were not involved in all of the allegations of Plaintiffs. While the court would normally dismiss certain Defendants for lack of personal partic-

ipation, it is unnecessary here because Plaintiffs' claims fail to survive summary judgment on other grounds.

## LEGAL STANDARDS

### Summary Judgment

Defendants have moved for summary judgment on all of Plaintiffs' claims. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

### Qualified Immunity

Plaintiffs have sued Defendants in both their individual and official capacities. With regard to the claims against them in their individual capacities, Defendants assert that they are entitled to qualified immunity. Qualified immunity shields an individual government official performing discretionary functions from liability for civil damages insofar as his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butler v. City of Prairie Village,* 172 F.3d 736, 745 (10th Cir.1999). Once a defendant asserts qualified immunity as a defense, the plaintiff bears a significant burden. *Hannula v. City of Lakewood,* 907 F.2d 129, 130 (10th Cir.1990). The plaintiff must show that the defendant has violated clearly established law. *Id.* at 131. It is only after the plaintiff has met this heavy burden that the court evaluates whether, under the normal summary judgment burden, the defendant has demonstrated that no material facts remain in dispute. *Id.* (citation omitted).

There are two steps in determining whether a plaintiff has met his burden. First, the court must decide whether the plaintiff has " 'asserted a violation of a constitutional right at all.' " *Moore v. City of Wynnewood,* 57 F.3d 924, 931 (10th Cir.1995) (quoting *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). If the plaintiff has made a valid claim, then the court must evaluate whether the asserted right was clearly es-

tablished such that a reasonable person in the official's position would have known that his or her conduct violated that right. *Id.*; *Merkel v. Leavenworth County Emergency Med. Servs.*, No. 98–2335–JWL, 2000 WL 127266, at *10 (D.Kan. Jan.4, 2000).

A defense based upon qualified immunity is ordinarily raised in a motion to dismiss, before the parties commence discovery. The purpose in addressing qualified immunity early is to protect the "substance" of the defense—to prevent defendants from being subjected to unnecessary and burdensome discovery. *Crawford–El v. Britton*, 523 U.S. 574, 597–98, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). However, defendants may be entitled to qualified immunity even after they have commenced discovery, if they raise the issue in a summary judgment motion. "Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

Under the above-stated qualified immunity standard, the court first must determine whether Plaintiffs have asserted any constitutional violations at all. For the reasons stated below, the court concludes that Plaintiffs have not met their burden. Defendants are entitled to qualified immunity and summary judgment on Plaintiffs' claims against them in their individual capacities.

## ANALYSIS OF PLAINTIFFS' CLAIMS

### I. False Arrest of Mr. Price

Plaintiffs first allege that Defendants are liable under § 1983 for the false arrest of Mr. Price. They allege that Mr. Price's arrest violated his Fourth and Fourteenth Amendment rights. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause." The protections of the Fourth Amendment are "enforceable against the States through the Fourteenth [Amendment]." *Colorado v. Bannister*, 449 U.S. 1, 2, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980) (per curiam); see also *Wolf v. Colorado*, 338 U.S. 25, 28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

Whether Mr. Price's arrest, as a warrantless arrest, amounts to an unreasonable seizure, and thus a constitutional violation, turns on whether there was probable cause to believe that he had committed a crime. See *Thompson v. City of Lawrence*, 58 F.3d 1511, 1515 (10th Cir.1995). "Under a § 1983 claim of unlawful arrest, [d]efendant police officers lose their shield of qualified immunity only if they could not have believed that [the plaintiff's] arrest was based on probable cause." *Id.* (citation omitted). The critical inquiry is not whether the plaintiff actually committed the crime at issue, but whether the police had probable cause to believe that he did.

The court may conclude that probable cause existed if "the arresting officer has knowledge of facts and circumstances which are reasonably trustworthy and sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (citation omitted); see also *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir.1985) (citations omitted); *Harris v. Evans*, 795 F.Supp. 1060, 1064 (D.Kan.1992) (citation omitted). The knowledge of other officers at the scene is also relevant. Under the "fellow officer rule," the court determines probable cause based on the "collective information of the

police involved in the arrest, rather than exclusively on the extent of the knowledge of the particular officer who may actually make the arrest." *Karr*, 774 F.2d at 1031 (citations and internal quotation marks omitted). Law enforcement officers are entitled to make mistakes, however— "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (citation omitted).

If a judge makes a determination of probable cause at a preliminary hearing, such determination serves as prima facie evidence of probable cause under Kansas law. *Thompson*, 58 F.3d at 1515 (citation omitted). To rebut such evidence, a plaintiff must show that the officers lacked probable cause by a preponderance of the evidence. *Id.* (citation omitted).

In the instant case, before arresting Mr. Price, the police officers interviewed witnesses at the scene, including both the alleged victims of the shooting and disinterested parties. The alleged victims, the teenage boys, gave consistent accounts of the events. Ms. Edgett, who was driving the boys, corroborated their story. Allen and Adrian Perkins also stated that Mr. Price fired the gun. The only people at the scene who stated affirmatively that Mr. Price did not fire the gun were Mr. and Mrs. Price. Mr. Chilson stated that he did not see Mr. Price with a gun, but he also was not outside at the time of the shooting. Moreover, Magistrate Judge Thornton made a finding of probable cause at Mr. Price's preliminary hearing and bound Mr. Price over for trial. Such a finding is prima facie evidence of probable cause. See *id.*

In an attempt to rebut Defendants' evidence, Plaintiffs assert that Magistrate Judge Thornton did not have enough information before her to make an informed decision as to whether there was probable cause. Plaintiffs cite *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for the proposition that the judge was required to make an independent assessment of the witnesses' credibility. *Gates* overruled both *Aguilar* and *Spinelli*. 462 U.S. at 238, 103 S.Ct. 2317.

In discussing *Gates*, *Aguilar* and *Spinelli*, Plaintiffs assert that Magistrate Judge Thornton should have been made aware of facts demonstrating the "informant's" basis of knowledge and the police officers' reasons for crediting the "informant." The problem with Plaintiffs' argument is that this case does not deal with confidential informants. "[C]ourts traditionally have distinguished between anonymous tipsters, whose motives and bases of knowledge are unknown to the investigating officers, and ordinary citizens who identify themselves and report crimes to the police." *J.B. v. Washington County*, 127 F.3d 919, 929 (10th Cir.1997); see also *Easton v. City of Boulder*, 776 F.2d 1441, 1449 (10th Cir.1985) ("[W]hen examining informant evidence used to support a claim of probable cause for a warrant, or a warrantless arrest, the skepticism and careful scrutiny usually found in cases involving informants, sometimes anonymous, from the criminal milieu, is appropriately relaxed if the informant is an identified victim or ordinary citizen witness.").

*Gates*, *Aguilar* and *Spinelli* all deal with the need to give a judge some way of assessing the credibility and reliability of a confidential informant. In the instant case, the police officers received the information on which they based the arrest and the application for a search warrant from ordinary citizens who were eyewitnesses to

the alleged shooting. Information received from ordinary citizens is presumed reliable. *Harris v. Evans*, 795 F.Supp. 1060, 1064 (D.Kan.1992) (citing *Karr*, 774 F.2d at 1032). The court therefore rejects Plaintiffs' argument that Defendants lacked probable cause under *Gates*, *Aguilar* and *Spinelli*.

Plaintiffs also argue that Allen and Adrian Perkins were not reliable or credible witnesses because they had criminal records. The court disagrees. The only evidence Plaintiffs have submitted in support of this argument is an unauthenticated list of case numbers purporting to be "prior records" of Allen and Adrian Perkins. Even if the court were to consider this inadmissible evidence, it cannot draw any conclusions from it. In any event, a criminal record does not affect an eyewitness's reliability. *United States v. Dennis*, 625 F.2d 782, 791 (8th Cir.1980).

Finally, Plaintiffs rely on Mrs. Price's testimony in her affidavit that she "overheard an Officer say a woman stated she 'didn't see David with a gun,' along with another witness, but the Officer stated that he 'didn't want to take statements from them.'" Plaintiffs argue that this statement indicates that the officers lacked probable cause to arrest Mr. Price. The court disagrees. The statement is hearsay and vague. It is insufficient to rebut the presumption of probable cause.

Based on this evidence, the court concludes that the police had probable cause to arrest Mr. Price. The statements taken from the witnesses were "reasonably trustworthy and sufficient to lead a prudent person to believe that the arrestee has committed ... an offense." See *Thompson*, 58 F.3d at 1515 (citation omitted). Because there was probable cause, there can be no constitutional violation. Absent a constitutional violation, Defendants are entitled to qualified immunity with regard to Mr. Price's false arrest claim.

## II. Malicious Prosecution of Mr. Price

Plaintiffs next allege that Defendants are liable under § 1983 for the malicious prosecution of Mr. Price. Again, they claim that the prosecution of Mr. Price violated his Fourth and Fourteenth Amendment rights.

The Tenth Circuit has recognized a cause of action under § 1983 for malicious prosecution. *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir.1996) (citations omitted). In *Taylor*, the court recognized that "[o]ur own circuit has not always written consistently on this issue." *Id.* After reviewing relevant case law, the *Taylor* court concluded that "[o]ur circuit takes the common law elements of malicious prosecution as a 'starting point' for the analysis of a § 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a *constitutional* violation." *Id.*

■ Under Kansas law, the elements of a malicious prosecution claim are:

(1) that defendant initiated, continued, or procured the proceeding of which complaint is made; (2) that defendant in doing so acted without probable cause; (3) that defendant must have acted with malice; (4) that the proceedings terminated in favor of plaintiff; and (5) that plaintiff sustained damages.

*Lindenman v. Umscheid*, 255 Kan. 610, 875 P.2d 964, 974 (1994) (citation omitted). The burden rests on the plaintiff to show the absence of probable cause for instituting the charges. *Patton v. Guyer*, 443 F.2d 79, 85 (10th Cir.1971).

■ Again, Plaintiffs' inability to present evidence showing that Defendants acted without probable cause is fatal to their claim. The court also notes that Plaintiffs have failed to present any evidence of malice. Plaintiffs attached several unauthenticated police department memos to their

brief, ostensibly to show that the police department unfairly targeted them. However, the memos are inadmissible, and the court will not consider them. See *Hammad*, 192 F.Supp.2d at 1228. Even if they were admissible, they do not demonstrate that any one of the police officers who are Defendants in this case unfairly targeted Plaintiffs.

Even though the court grants summary judgment on Plaintiffs' claim of malicious prosecution, it expressly rejects Defendants' argument that police officers cannot be held liable for malicious prosecution because the prosecutor, not the officer, makes the decision to prosecute. "[A] prosecutor's decision to charge will not shield a law enforcement officer whose misconduct influences the prosecutor's decision." *Fillmore v. Ordonez*, 829 F.Supp. 1544, 1560 (D.Kan.1993) (citing *Robinson v. Maruffi*, 895 F.2d 649, 656 (10th Cir. 1990)). "The prosecutor's actions under such circumstances are not independent from, but rather dependent on, the police officer's wrongful conduct." *Thomas v. City of Snyder*, No. 95–6252, 1996 WL 662453, at *4 (10th Cir. Nov.15, 1996) (citing *Robinson*, 895 F.2d at 656). If the police officers had acted unlawfully in this case, they could have been held liable for malicious prosecution. Nevertheless, because Plaintiffs have failed to present evidence that Defendants lacked probable cause or that Defendants acted with malice, Defendants are entitled to qualified immunity.

### III. False Imprisonment of Mrs. Price

Plaintiffs next claim that Defendants are liable under § 1983 for the false imprisonment of Mrs. Price while they waited to obtain the search warrant for her home. They claim that Mrs. Price was detained at her home and prevented from entering it, constituting an unreasonable seizure in violation of the Fourth and Fourteenth Amendments.

■ To prevail on her § 1983 false imprisonment claim, Mrs. Price must meet the elements of a common law claim and show that she was deprived of a constitutional right. To establish a claim for false imprisonment under Kansas state law,

[A]ll that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which the one being restrained fears to disregard. It is universally held the action of false imprisonment always includes the element of an assault in the technical sense. Further, it is recognized that a person must be held against their will. "[I]f one agrees of one's own free choice to surrender freedom of motion, as by remaining in a room or accompanying another voluntarily, to clear oneself of suspicion or to accommodate the desires of the other, rather than yielding to the constraint of a threat, then there is no imprisonment."

*Wright v. Montgomery Ward & Co.*, 814 F.Supp. 986, 989 (D.Kan.1993) (internal citations omitted) (emphasis added).

■ The court need not reach the question of whether Mrs. Price has stated a constitutional violation. She has not even offered evidence sufficient to meet the common law elements. She fails to rebut Defendants' "sufficient legal cause," and she fails to establish that she was held against her will. Defendants' "sufficient legal cause" was a pressing law enforcement need. They had probable cause to believe a gun was in the home because Mr. Price was seen entering and exiting the home after the alleged shooting. For their own safety and to preserve any evidence located in the Price home, Defendants needed to seal off the home. The United States Supreme Court approved such a tactic in *Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001).

In *McArthur*, police officers who had probable cause to suspect that a man had marijuana in his home prevented him from entering the home while they obtained a search warrant. *Id.* at 329, 121 S.Ct. 946. They kept the man out of his home for about two hours, only letting him reenter his home with a police escort. *Id.* He reentered the home two or three times, to get cigarettes and to make phone calls. *Id.* The Supreme Court held that the police did not violate the man's Fourth Amendment rights by keeping him out of the home because there were exigent circumstances. *Id.* at 331, 121 S.Ct. 946. The Court also held that the restraint was tailored to a specific law enforcement need because it was limited in time and scope and avoided significant intrusion into the home. *Id.* After balancing privacy-related and law enforcement-related concerns, the Court concluded that the restriction was reasonable. *Id.*

As in *McArthur*, Defendants' actions in keeping Mrs. Price out of the home while they waited on the search warrant were tailored to a specific law enforcement need. They only sealed off the home for the amount of time it took to obtain the search warrant. As the Supreme Court stated in *McArthur*, "[a]s far as the record reveals, this time period was no longer than reasonably necessary for the police acting with diligence to obtain the warrant." *Id.* at 332, 121 S.Ct. 946. They allowed Mrs. Price to reenter the home with an escort. Defendants had sufficient legal cause—i.e., probable cause—to restrict her access, and Mrs. Price's false imprisonment claim must fail.

Likewise, to the degree that Mrs. Price claims she was prevented from leaving the home, her claim must fail because she has not demonstrated that she was prevented from leaving the home against her will. In deposition, Mrs. Price testified that she stayed at the home because "I didn't want

to leave my home. In other words, I didn't want to leave the premises." She also stated that "Officer Cochran stated he wanted me to stick around to answer any questions." It was only later, by affidavit, that Mrs. Price testified, "At this time Officer Cochran advised me not to leave as he may have other questions for me. I felt that this was a direct Police Order, therefore, I was fearful of being arrested if I did not comply."

It is well-settled that "courts will disregard a contrary affidavit [an affidavit contrary to earlier testimony] when they conclude that it constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). In Franks, the Tenth Circuit enumerated factors a court should consider when evaluating whether an affidavit is an attempt to create a sham fact issue:

> Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.

*Id.* Analysis of these factors leads the court to conclude that Mrs. Price's later statement that she was fearful of being arrested if she left the home is an attempt to create a sham fact issue. Mrs. Price had full opportunity in her deposition to explain that she was afraid to leave the home. Her alleged fear was not newly discovered evidence, and there was no apparent confusion concerning her earlier statement. Based on the evidence before the court, the court concludes that Mrs. Price remained at her home by her own choice. Plaintiffs have presented no evidence that Mrs. Price was falsely impris-

oned, and Defendants are entitled to qualified immunity on her claim.

## IV. Illegal Search of the Price Home

■ Plaintiffs next claim that Defendants are liable under § 1983 for the illegal search of their home. Plaintiffs allege that the manner in which the officers secured the area before executing the warrant violated their Fourth and Fourteenth Amendment rights. They also allege that the execution of the warrant, because it was not based on probable cause, violated their Fourth and Fourteenth Amendment rights. The court has already addressed both of these arguments. Again, the *McArthur* case clearly validates the officers' act of securing the home until they could obtain a search warrant. "Temporarily keeping a person from entering his home, a consequence whenever police stop a person on the street, is considerably less intrusive than police entry into the home itself in order to make a warrantless arrest or conduct a search." *McArthur*, 531 U.S. at 336, 121 S.Ct. 946. In addition, the court has already concluded that Plaintiffs have not met their burden of showing that Defendants lacked probable cause to arrest Mr. Price. Likewise, Plaintiffs have not met their burden of showing that the search warrant was not based on probable cause. The search warrant was issued based on the same information that led to Mr. Price's arrest, plus the additional information that Mr. Price had been seen entering and exiting his house after allegedly shooting the gun. For the reasons stated earlier in this opinion, the court concludes that the search warrant was based on probable cause.

The only aspect of this claim that the court has not yet addressed is Plaintiffs' claim in the pretrial order that "Defendants unlawfully searched Plaintiffs' ... property, including their patio, detached garage and grounds, knowing that they had no legal right to do so, no search

warrant having been obtained, and after they had been lawfully ordered off Plaintiffs' property, pending the arrival of a valid warrant." In support of this claim, Plaintiffs cite Mrs. Price's deposition testimony that Defendant Cochran looked for shell casings in the front yard and peered into the living room window. Mrs. Price also testified that Defendant Helmkamp looked down at the ground in the front yard near the sidewalk for shell casings, and that Defendant Wempe was on the side and in the back of the home "looking at the ground and elsewhere on the house." Finally, she testified that Defendant Grayson was taking pictures of rocks and looking for shell casings in the front yard of the home.

Even if the court assumes that Defendants' actions violated the constitutional prohibition of unreasonable search and seizure, the violation was *de minimus*. See *Artes–Roy v. City of Aspen*, 31 F.3d 958, 962–63 (10th Cir.1994) (compiling cases holding that a constitutional violation was *de minimus* ); *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981) ("Any deprivation of Wise's visitation rights was so insubstantial in duration and effect to rise to a federal constitutional level."). Defendants are entitled to qualified immunity as to Plaintiffs' claim for the unconstitutional search of their home and premises.

## V. Official Capacity Claims

Plaintiffs have also sued Defendants in their official capacities. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality may only be held liable for a § 1983 claim if it has established a policy or custom that causes the alleged injury. *Id.* at 690, 98 S.Ct. 2018. A qualifying policy must be a

"policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* A qualifying custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Plaintiffs make the following argument in support of their allegation that the City of Topeka's policies or customs caused their injuries:

> The Plaintiffs can show, by the contract between the City of Topeka and the F.O.P. [ (Fraternal Order of Police) ] that it was customary to disseminate information prior to Officers, in which Officers would disseminate the information throughout the Police Department, by Memorandums or Police memos. This would prejudice other Police Officers['] attitudes towards targeted individuals, such as the Plaintiff, named in the derogatory memos.... The Plaintiffs in this case have shown that the policies of the contract between the City of Topeka and the F.O.P. have had a direct bearing on this case, concerning the indirect way, the actions of the Officers, were a result of this contract.

The evidence Plaintiffs have submitted in support of this argument is unauthenticated and inadmissible. Even if the court were to consider Plaintiffs' evidence, Plaintiffs' claim would still fail. The court has already concluded that there were no constitutional rights violations upon which to base a claim. Accordingly, the court grants summary judgment on Plaintiffs' claims against Defendants in their official capacity.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants' Motion for Summary Judgment (Doc. 141) is granted.

IT IS FURTHER ORDERED that Plaintiffs' Objection, Under Fed.R.Civ.P. 56(d)(e)(g) to the Summary Judgment [Filed] by the Defendants (Doc. 147) is overruled.

The case is closed.

Copies of this order shall be transmitted to *pro se* Plaintiffs and counsel of record.

**IT IS SO ORDERED.**